## Nudd *v.* Hobbs.

Whether the title of owners of land bounded on the sea shore extends to low water mark, *quære.*

A right of way over the land of an individual may be acquired and exercised by the inhabitants of a town.

A custom to take profits *in alieno solo* is bad; therefore a plea that the inhabitants of a town took sea-weed from the land of the plaintiff, by customary right, is no justification.

TRESPASS for breaking and entering the plaintiff's close, &c.

The defendant pleaded in justification,

1. A right of way, common to all the inhabitants of Hampton, over the land where the alleged trespasses were committed, to the shore of the Atlantic ocean.

2. A customary right and privilege on the part of the defendant, as an inhabitant of the town of Hampton, to collect and carry away sea-weed and rock-weed from the shore of said ocean, and that he entered upon and passed over the lands of the plaintiff, which adjoin said ocean, in the exercise of said privilege.

3. A similar right on the part of the defendant, as a citizen of this State, to procure and take away sea-weed and rock-weed from the shore of said ocean, and a privilege of freely passing and re-passing to the shore for that purpose.

The plaintiff demurred specially, assigning for causes,—

That the custom or privilege alleged by the defendant is unreasonable, and one which the inhabitants of Hampton, or the citizens of the State, could not by law have in the plaintiff's close.

That it is not alleged in the plea of the defendant that there *was* rock-weed or sea-weed on the plaintiff's close, belonging to the defendant, and that he entered for the purpose of taking it away.

That the rights and privilege set forth in said plea are in land without the bounds of the plaintiff's close.

*Bell & Tuck*, for the plaintiff.

*Emery & Bartlett*, for the defendant.

Parker, C. J. The first special plea of the defendant sets forth a right of way in all the inhabitants of the town of Hampton across the plaintiff's close ; and we are of opinion that this is a sufficient plea for the matters attempted to be justified by it. 7 N. H. 236, *Perley* v. *Langley, and authorities there cited.* It is not necessary to show an open public highway. There may be a way across the land of an individual, over and along which all persons have a right to pass, with a right in the owner of the soil to keep up gates and bars across it, for the protection of his field. So there may be other limitations or restrictions upon a public easement,—as that it shall be used by persons on foot only, or by those, and persons riding on horseback. And in such cases a plea in justification must qualify the right accordingly. Chitty on Pl. 1116, note y, 9th Am. ed.

A right of way also may exist in particular persons holding certain estates. There can, therefore, be no objection to a way limited to the inhabitants of a particular territory, and Chitty, in the page just cited, (*note w*), refers

to Lutw. 1507, for a precedent of a right of way by the inhabitants of a town. It is not necessary in pleading to set out the abuttals of such a way, or to state its *termini*. 1 H. Bl. 351; 8 T. R. 608; 2 Chitty Pl. 1116.

The second and third pleas are insufficient. By these pleas the defendant attempts to justify entering the plaintiff's close, for the purpose of there taking sea-weed and rock-weed. It does not appear from any thing stated in the second plea that the *locus in quo* was below high water mark; and although the third plea may be understood to allege that the entry was between high and low water mark, it begins with an averment that the close of the plaintiff in which the supposed trespasses were committed, now is, and from the time of which the memory of man runneth not to the contrary hath been, contiguous and adjoining to the Atlantic ocean; thus admitting that the place where the alleged trespasses were done is the close of the plaintiff.

The question is not raised, therefore, by these pleas, whether by the general rules of law the title of the owner of land bounded on the sea-shore extends to low water mark. It has been held in Massachusetts that the colonial ordinance of 1640, declaring that in all places upon salt water where the sea ebbs and flows, the proprietor of the land adjoining shall own the land to low water mark, or to the distance of one hundred rods, if the sea ebbs farther than one hundred rods, though never extended to the colony of Plymouth, is nevertheless a settled rule of property in every part of that State. 13 Pick. 255, *Barker* v. *Bates*; 19 Pick. 191, *Sale* v. *Pratt*.

By the union of the settlements in New-Hampshire with the colony of Massachusetts, the laws of the Massachusetts colony were extended over those settlements, and justice was administered here according to the rules there prescribed. This union continued until 1679, and during that time the ordinances relating to lands bounding on the sea-shore would seem to have been in force here, as a

part of the laws regulating the title to real property. If this be so, it may perhaps be held that the first enactment of the general assembly of the province of New-Hampshire, under the commission constituting a president and council for its government, which provided that the laws they had formerly been governed by should be a rule in judicial proceedings, so far as they would suit our constitution, and not be repugnant to the laws of England, until others were legally published, included the ordinance of 1641, so that it has been transmitted as the rule in relation to this species of property to the present day. 8 N. H. Rep. 561, *State* v. *Rollins.*

However this may be, the question raised by the second and third pleas in this case is, whether the inhabitants of a town, or the citizens of the State, can justify an entry into the land of an individual, and the taking of sea-weed and rock-weed therein, for their own use, under a custom so to do. We are of opinion that this question must be determined in the negative. Sea-weed and rock-weed thrown upon the shore belong to the owner of the land upon which it is deposited. 2 Johns. 313, *Evans* v. *Turnbull;* 9 Conn. 38, *Chapman* v. *Kimball.*

And it has been held that the owner of sea-shore has a title to and possession of wreck thrown upon his shore, and not reclaimed by the original proprietor, in preference to a mere stranger, and that he may maintain trespass and recover the value of the property against a stranger who has entered and taken it away.

The custom set up in the pleas, therefore, cannot avail the defendants. A custom for the inhabitants of a town to take a profit *in alieno solo,* is bad; 7 N. H. Rep. 233, *Perley* v. *Langley;* 4 T. R. 717, *Grimstead* v. *Marlowe;* and the citizens of the State generally cannot make out a better right to take such profit by mere custom. On the pleadings as they stand there must be judgment for the defendant on the first, and for the plaintiff on the second and third pleas.